UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| VERNON MATHEWS, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | No. 1:10-cv-633-SEB-DKL |
| ) | |
| DR. RICHARD M. CARR, M.D. et al., ) | |
| ) | |
| Defendants. ) | |

**Entry Granting Motion for Summary Judgment**

Vernon Mathews sues Richard M. Carr, M.D. and Carrie Johnson, claiming that they were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.[1] The defendants deny Mr. Mathews' allegations and seek resolution of his claim through the entry of summary judgment.

For the reasons explained below, the defendants' motion for summary judgment [41] must be **granted.**

**I. Summary Judgment Standard**

"As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1103 (7th Cir. 2008) (citations omitted). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is material if it might affect the outcome of the suit under the governing law, and a dispute about a material fact is genuine only if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). When the moving party has met the standard of Rule 56, summary judgment is mandatory. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Shields Enters., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992).

---

1 Other claims were dismissed pursuant to 28 U.S.C. § 1915A(b) in the Entry of August 10, 2010.

"In evaluating a motion for summary judgment, a court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute." *Harney,* 526 F.3d at 1104 (internal citations omitted). "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996), *cert. denied*, 519 U.S. 1115 (1997).

A court "may consider only admissible evidence in assessing a motion for summary judgment." *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009)(citing cases). Materials which do not comply with the standard of Rule 56(e) will be disregarded. *Ziliak v. AstraZeneca LP,* 324 F.3d 518, 520 ((7th Cir. 2003)("[A] party's failure to comply with summary judgment evidentiary requirements is traditionally remedied . . . by excluding the non-conforming submission and deeming the opposing party's proposed findings of fact admitted and then determining whether those facts entitle the moving party to judgment as a matter of law."). "An affidavit not in compliance with Rule 56 can neither lend support to, nor defeat, a summary judgment motion." *Paniaguas v. Aldon Cos.,* 2006 WL 2568210, at *4 (N.D.Ind. Sept. 5, 2006) (citing *Zayre Corp. v. S.M. & R. Co.,* 882 F.2d 1145, 1148-49 (7th Cir. 1989); *Palucki v. Sears, Roebuck & Co.,* 879 F.2d 1568, 1572 (7th Cir. 1989)).

## II. Material Facts

The defendants' brief in support of summary judgment properly sets forth facts supported by admissible evidence as required by *Federal Rules of Civil Procedure* 56(c)(1) and Local Rule 56.1(a). The undisputed factual record shows the following:

At present and at the times pertinent to this action Mr. Mathews was a prisoner of the State of Indiana confined at the Pendleton Correctional Facility. On April 14, 2008, Mr. Mathews submitted a request for healthcare stating that something was wrong with his bottom right lip. Mr. Mathews claimed that the problem had existed for six months. On April 16, 2008, a nurse triaged Mr. Mathews and noted that his lip had become asymmetrical over the past six months. Nurse Billy Hamby took Mr. Mathews' vital signs and noted a lip abnormality on the right lower lip and a puritic, peeling, and cracking of the skin, but no evidence of infection. Nurse Hamby also noted a white and yellow patchy area on the bottom center of Mr. Mathews' lip. Mr. Mathews reported that he had tried Vaseline, Chapstick, and lip balm, but nothing helped. Nurse Hamby referred Mr. Mathews to the doctor.

On April 28, 2008, Mr. Mathews submitted another request for healthcare regarding his lip problem. In response, he was scheduled to see the doctor. Mr. Mathews saw the doctor on April 29, 2008.

On May 15, 2008, Mr. Mathews submitted a request for healthcare stating that he saw the doctor on April 29, 2008, and that he was supposed to get a lip biopsy. Nurse M. Harris, LPN, responded to Mr. Mathews' request for healthcare on May 17, 2008, and informed him that he was scheduled to see the doctor.

Dr. Richard Carr examined Mr. Mathews on May 21, 2008. Dr. Carr noted that Mr. Mathews had a lesion on his mid-lower lip, which was dry and irritated. Mr. Mathews also had a similar, but much smaller lesion, on his mid-upper lip. Because Mr. Mathews was concerned about his condition, which he reported had been present for six months, and to rule out any malignant process, Dr. Carr performed a lip wedge excision (biopsy) on the upper and lower lip under local anesthetic. He did so out of concern for possible malignant growth on Mr. Mathews' lip. Aff. of Dr. Carr, paragraph 5. Mr. Mathews tolerated the procedure well. Dr. Carr prescribed Naprosyn for pain and Penicillin V Potassium to prevent infection. Dr. Carr stitched the areas from which he took the biopsy and sent the tissue to the lab for testing for microbiology and pathology. Dr. Carr did not perform any unnecessary procedures on Mr. Mathews and Dr. Carr testified that he performed the procedure out of concern for Mr. Mathews' health.

On May 22, 2008, Mr. Mathews submitted a request for healthcare stating that his lips were getting worse. Mr. Mathews also stated that Dr. Carr took the biopsy from a larger area than he needed to and that his lips were red and swollen. The fact that Mr. Mathews' lips were red and swollen was a normal and expected side-effect of the procedure that was performed on his lips on May 21, 2008. Aff. of Dr. Carr, paragraph 6. Mr. Mathews' lips needed time to completely heal from the procedure for the swelling and redness to subside. *Id.*

Dr. Carr examined Mr. Mathews again on May 23, 2008, two days after the procedure. Dr. Carr noted that Mr. Mathews was concerned about the amount of swelling he still had on both lips. Dr. Carr noted that the upper and lower lip incisions were intact and that Mr. Mathews had moderate (normal) post-operative swelling. Dr. Carr instructed Mr. Mathews to continue applying ice and cold water to the area.

Mr. Mathews' lip tissue was sent to the lab on May 23, 2008. The initial report was generated on May 28, 2008 and the final report was not generated until June 27, 2008. The pathology report for the lower lip biopsy showed "psoriasiform epidermal hyperplasia with degenerative changes on the surface," which means benign lesions or growths, and hyperkeratosis, which is a severe blistering and scaling of the skin, indicative of chronic irritation or rubbing, but no evidence of neoplastic process. The lab report was negative for any cancerous process.

On June 1, 2008, Mr. Mathews submitted a request for healthcare stating that the stitches on his bottom lip had not yet fallen out and that his lips seemed worse than before. In response to this request, medical staff scheduled Mr. Mathews to come to the medical unit to have his stitches removed. Dr. Richard Carr left the Pendleton Correctional Facility in early June, 2008, to become the physician at a different facility. His care of Mr. Mathews ended at that time.

On June 9, 2008, Mr. Mathews wrote a letter to Carrie Johnson, the Health Services Administrator, stating that Dr. Carr had no reason to do a biopsy on his upper lip because there was nothing wrong with that lip. In response to this letter and an inquiry from the Indiana Department of Correction ("DOC"), Ms. Johnson sent an email to Dr. Richard Carr on June 9, 2008, asking him to make additional chart entries regarding his post-operative exam of Mr. Mathews. Dr. Carr complied with this request. Other than responding to Ms. Johnson's email, Dr. Carr had no involvement with Mr. Mathews' medical care after he left the Pendleton Correctional Facility in early June, 2008. After Ms. Johnson received the information from Dr. Carr, she relayed that information to Rose Vaisvilas, a DOC employee, and she instructed Nurse Michelle Harris to schedule Mr. Mathews to see Dr. Lorenzo Eli because Mr. Mathews was concerned about his lips.

On June 30, 2008, Mr. Mathews submitted a request for healthcare stating that he had surgery on his top and bottom lips, but that he was only supposed to have had surgery on the bottom lip. He complained that his lips hurt more and were more sensitive than before. Mr. Mathews was referred to the doctor in response to his request for healthcare. Dr. Lorenzo Eli examined Mr. Mathews on July 11, 2008. Dr. Eli noted that the biopsy was negative for malignant neoplasm. Dr. Eli noted that Mr. Mathews had a little scar on his lower lip and some induration inside his upper lip. Dr. Eli gave Mr. Mathews a tube of Vaseline moisture cream to apply to his lips.

Defendant Carrie Johnson is the former Health Services Administrator at the Pendleton Correctional Facility. As the Health Services Administrator, Ms. Johnson did not treat offenders. Her job was to hire medical staff, order medical supplies, maintain the nursing staff schedule, respond to offender grievances regarding medical issues, and deal with human resource issues regarding the medical staff. Ms. Johnson did not have any personal involvement in Mr. Mathews' medical care and did not have any input or decision-making role in any of Mr. Mathews' medical treatment. Ms. Johnson did not review requests for healthcare from offenders or schedule offenders to see the doctor; that was the responsibility of the nursing staff. The decisions regarding Mr. Mathews' medical treatment were made by the nurses and doctors who treated him, not by Ms. Johnson. Ms. Johnson did not exercise any control or authority over the doctors who treated Mr. Mathews.

Mr. Mathews' Response and Surreply [46 and 49] argue that summary judgment is not appropriate because there are two material facts in dispute, specifically:

1. Dr. Carr did not obtain Mr. Mathews' written consent to perform the surgery on his lips, a violation of DOC and Correctional Medical Services (CMS) policies.

2. Dr. Carr was under the influence of drugs and/or alcohol when he treated Mr. Mathews.

Mr. Mathews' proposed facts in dispute may be disregarded because they are not supported by citations to admissible evidence as required by Rule 56(c) and Local Rule

56.1(b). *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."). Even if Mathews was given "an opportunity to properly support or address the fact" by authenticating the documents on which he relies, the proposed disputed facts are deficient for other reasons. Fed. R. Civ. P. 56(e)(1).

As to the consent issue, whether or not DOC or CMS policies were violated is not material to whether or not Dr. Carr violated Mathews' Eighth Amendment rights. As noted, the action is brought pursuant to 42 U.S.C. § 1983. The Seventh Circuit Court of Appeals

> has consistently held that 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices. In other words, the violation of police regulations or even a state law is completely immaterial as to the question of whether a violation of the federal constitution has been established.

*Thompson v. City of Chicago,* 472 F.3d 444, 454 (7th Cir. 2006)(internal quotations and citations omitted). It is therefore evident that the plaintiff cannot maintain a claim under § 1983 based on alleged violations of DOC and CMS policies.[2]

Notwithstanding the foregoing, the undisputed evidence reflects that the procedure Dr. Carr performed was a biopsy on Mr. Mathews' lips. Mr. Mathews' request for healthcare dated May 15, 2008, specifically states that the doctor was going to "schedule me to get my lip biopsy, but nothing has been done yet, so what seems to be the problem?" Dkt. 44-4 at p. 5. This request for healthcare demonstrates that Dr. Carr told Mr. Mathews that he intended to perform a lip biopsy and Mr. Mathews requested that treatment. Perhaps, Mr. Mathews' argument is that he did not understand what the lip biopsy entailed (a wedge excision of his mid upper and lower lip) and thus he could not have given his informed consent. This proposition, even if supported by competent evidence, would not defeat the motion for summary judgment.

In support of Mr. Mathews' assertion that Dr. Carr was under the influence of drugs or alcohol at the time Dr. Carr performed the biopsy Mr. Mathews submits unauthenticated documents from the Indiana State Medical Licensing Board. These documents reference alcohol use in May 2009, a year after the medical care at issue. In addition, Mr. Mathews' affidavit states that Dr. Carr was under the influence of drugs and/or alcohol when he performed the procedure at issue. Mr. Mathews has not shown that he has any personal knowledge whatsoever about what Dr. Carr allegedly consumed

---

[2] For clarity, it is noted that Mr. Mathews has not alleged that Dr. Carr violated his due process right to be free from unwanted medical treatment. See *Cruzan by Cruzan v. Director, Missouri Dept. of Health*, 497 U.S. 261, 278 (1990); *Russell v. Richards*, 384 F.3d 444 (7th Cir. 2004). Nor could he succeed on such a claim. The evidence reflects that Mr. Mathews repeatedly sought medical care for his lips, including a lip biopsy. There is no evidence that Dr. Carr purposely subjected Mr. Mathews to unwanted medical care, or that Mr. Mathews resisted the lip biopsy when it was conducted. At most, Dr. Carr may have been negligent in failing to obtain written consent for the lip wedge excision and for failing to explain (to Mr. Mathew's satisfaction) what a lip biopsy entailed.

on that day as required by *Federal Rules of Civil Procedure* 56(c)(4). But, even if Dr. Carr was under the influence of drugs or alcohol (again there is no evidence that he was) such a fact is irrelevant because as explained below there is no evidence that the treatment Dr. Carr provided was constitutionally inadequate. In other words, the issue here is solely whether Mr. Mathews received constitutionally adequate medical care.

### III. Discussion

The Eighth Amendment of the United States Constitution proscribes cruel and unusual punishment, a proscription that is violated when prison officials display "deliberate indifference to [the] serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A claim based on deficient medical care must demonstrate two elements: 1) an objectively serious medical condition; and 2) an official's deliberate indifference to that condition. *See Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006).

"Deliberate indifference" is a robust state-of-mind requirement, ensuring that "the mere failure of the prison official to choose the best course of action does not amount to a constitutional violation." *Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002). Although a prisoner need not show that the official intended the harm that occurred to surmount this requirement, circumstances that suggest negligence—or even gross negligence—by the official are insufficient to establish a constitutional violation. *Estelle*, 429 U.S. at 106; *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010). In other words, "[d]eliberate indifference is not medical malpractice." *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). Rather, deliberate indifference exists only if the official was aware of the condition and actually drew an inference that substantial harm would result if the condition was ignored or improperly addressed. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). "A jury can infer deliberate indifference on the basis of a physician's treatment decision [when] the decision [is] so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Arnett v. Webster,* 658 F.3d 742, 750-51 (7th Cir. 2011) (quoting *Duckworth*, 532 F.3d at 679). "A plaintiff can show that the professional disregarded the need only if the professional's subjective response was so inadequate that it demonstrated an absence of professional judgment, that is, that 'no minimally competent professional would have so responded under those circumstances.'" *Id.* (quoting *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011)). That the prisoner received some treatment does not foreclose his deliberate indifference claim if the treatment received was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate his condition." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

Although neither party specifically addresses the issue, it is assumed for the purposes of this Entry that Mr. Mathews suffered from a serious medical condition. And because it is undisputed that the Dr. Carr and Ms. Johnson were aware of this serious medical condition, the focus is on whether they acted with deliberate indifference in response.

*Ms. Carrie Johnson.* The defendants argue that Carrie Johnson is entitled to summary judgment because she was not personally involved in the Constitutional violation of which Mathews complains.

Only persons who cause or participate in a constitutional violation are responsible pursuant to 42 U.S.C. § 1983. *George v. Smith.* 507 F.3d 605, 609-610 (7th Cir. 2007). "A defendant will be deemed to have sufficient personal responsibility if he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent." *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001); *Burks v. Raemisch,* 555 F.3d 592, 593-94 (7th Cir. 2009) ("Section 1983 does not establish a system of vicarious responsibility. Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise. . . . *Monell's* rule [is that] that public employees are responsible for their own misdeeds but not for anyone else's.")(citing *Monell v. New York City Dep't of Social Services,* 436 U.S. 658 (1978)).

Ms. Johnson is entitled to summary judgment because there is no evidence that she personally caused, contributed to, or participated in the Eighth Amendment violation alleged by Mr. Mathews. Mr. Mathews argues that Ms. Johnson "had to know about the disciplinary actions against Dr. Carr, she is the health care administrator, her duties [sic] is to oversee all staff. She hid the facts against Dr. Carr, knowing he was working without an licensing permit to practice medicine. . . she is held responsible for the actions of Dr. Carr." Dkt. 49 at p. 2-3. There is no evidence in support of this speculative assertion and thus it is disregarded.

The record reflects that Ms. Johnson had no personal involvement in Mr. Mathews' medical care. Ms. Johnson was an administrator and did not schedule offenders to see the doctor, nor did she review their requests for healthcare. Ms. Johnson became aware of Mr. Mathew's medical care when she received a letter from him. Her response was appropriate. She followed-up with Dr. Carr for information regarding Mr. Mathews' treatment. Ms. Johnson then told the nurse to schedule Mr. Mathews to see the doctor. Ms. Johnson did not violate Mr. Mathews' Eighth Amendment rights and she cannot be held vicariously liable for Dr. Carr's actions. Ms. Johnson is entitled to judgment in her favor as a matter of law.

*Dr. Richard M. Carr.* The defendants argue that Dr. Carr is entitled to summary judgment because the medical treatment he provided to Mr. Mathews was reasonable and performed out of concern for Mr. Mathews' health, not out of a disregard for Mr. Mathews' medical condition.

The evidence reflects that Dr. Carr made a reasoned medical decision to perform a lip wedge excision of the asymmetrical lesions on Mr. Mathews' lips. This procedure was done out of concern for possible cancerous growths. Dr. Carr took measures to numb the area and to address pain associated with the procedure. The excised portions of Mr. Mathews' lips were sent to a laboratory for analysis. In addition to performing a biopsy on Mr. Mathews' lips, Dr. Carr examined Mr. Mathews two days after the procedure. At that time, Mr. Mathews was doing well and had normal post-operative swelling and

discomfort. There is simply no evidentiary basis upon which a reasonable jury could find that Dr. Carr was deliberately indifferent to Mr. Mathews' serious medical needs or that he acted in an effort to cause Mr. Mathews unnecessary pain.

Mr. Mathews argues that Dr. Carr performed an unnecessary lip wedge excision on Mr. Mathews' upper lip, but this argument is unqualified and unsupported. Simply put, Mr. Mathews is dissatisfied with the course of treatment Dr. Carr provided. But dissatisfaction alone is insufficient to rise to the level of a violation of the Eighth Amendment. *Montanez v. Feinerman,* 2011 WL 4005113, *2 (7th Cir. September 9, 2011) (citing cases). Without evidence that Dr. Carr's treatment was so far afield of accepted professional standards as to raise the inference that it was not actually based on medical judgment, Mr. Mathews' Eighth Amendment claim fails. *Arnett,* 658 F.3d 742, 758 (7th Cir. 2011). Accordingly, Dr. Carr is entitled to judgment in his favor as a matter of law.

### IV. Conclusion

It has been explained that "summary judgment serves as the ultimate screen to weed out truly insubstantial lawsuits prior to trial." *Crawford-El v. Britton,* 118 S. Ct. 1584, 1598 (1998). This is a vital role in the management of court dockets, in the delivery of justice to individual litigants, and in meeting society's expectations that a system of justice operate effectively. Indeed, "it is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank,* 704 F.2d 361, 367 (7th Cir. 1983).

Mr. Mathews has not identified a genuine issue of material fact as to his claims in this case, and the defendants are entitled to judgment as a matter of law. The motion for summary judgment [41] is therefore **granted**.

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 12/02/2011

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana